UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL BONNER,

    Plaintiff,

v.

BOSAL INDUSTRIES - GEORGIA, INC.,

    Defendant.
_____/

Case No. 2:16-cv-11629

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [20]**

Plaintiff Cheryl Bonner sued her former employer, Defendant Bosal Industries - Georgia, Inc., and alleged gender discrimination and retaliation in violation of Title VII as well as pendent state claims under Michigan's Elliott-Larsen Civil Rights Act. ECF 1. Now before the Court is Defendant's Motion for Summary Judgment. ECF 20. The issues have been fully briefed, and the Court held a hearing. For the reasons set forth below, the Court will deny Defendant's Motion.

**BACKGROUND**[1]

Plaintiff began her permanent employment with Defendant in December 2010 as a Quality Operator. ECF 25-2, PgID 389, 393. Four years later, Plaintiff was promoted to Shift Manager and paid a $55,000 annual salary. ECF 20-3, PgID 104. Defendant admits that Plaintiff's salary was $2,000 less than that of two male co-workers, Mustafa Saif and Bernard Harris, who were each promoted to Shift Manager around the same time. ECF 20, PgID 77; ECF 20-32, PgID 270.

---

[1] At the present stage in the litigation, the Court recounts the facts in the light most favorable to Plaintiff.

In early 2015, Plaintiff complained internally that an Operations Manager had made sexist comments and treated her less favorably than her male counterparts. ECF 25-2, PgID 411–13; ECF 25-11, PgID 465. Plaintiff ultimately took her complaint to the EEOC on July 6, 2015. ECF 20-33, PgID 273. Afterwards, Defendant alleges Plaintiff had a slew of documented performance issues. *See, e.g.*, ECF 20, PgID 76–80; ECF 20-22; ECF 20-25. Less than two months after Plaintiff filed her EEOC complaint, Defendant issued a "Final Warning Memo" threatening termination. ECF 20-27, PgID 255. After the final warning was issued, there was an incident in which Plaintiff allegedly did not properly address a malfunctioning machine during critical production time. ECF 20-29, PgID 259–60. Defendant terminated Plaintiff shortly thereafter, ECF 25-11, PgID 476, and Plaintiff brought suit.

## STANDARD OF REVIEW

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify specific portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings, but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences " in the light most favorable to the nonmoving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

**DISCUSSION**

I.   Discrimination Claim

Plaintiff alleges that Defendant violated 42 U.S.C. § 2000e-2 by paying two male Shift Managers a $2,000 higher salary. ECF 1, PgID 3–4. Because Plaintiff relies on circumstantial evidence, ECF 25, PgID 375, the Court must apply the burden-shifting test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) to analyze the claim. Under authority of those cases, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252–53. To make the showing, Plaintiff must prove that (i) she is a member of a protected class, (ii) she was subjected to an adverse employment decision, (iii) she was qualified for the position, and (iv) similarly situated members of a non-protected class were treated more favorably. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). Plaintiff's burden is not onerous at the initial phase. *Burdine*, 450 U.S. at 253.

If Plaintiff discharges her initial burden, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Defendant does not need to persuade the Court that it was actually motivated by the proffered reasons. *Id.* at 254. Rather, it needs only to raise a genuine issue of fact as to whether it discriminated against Plaintiff. *Id.*

If Defendant discharges its burden, then the final burden shifts back to Plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons[.]" *Id.* at 253. To do so, Plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for unlawful discrimination. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011).

Addressing each step in turn, the Court will find that Plaintiff's claim survives the burden-shifting test and deny Defendant's motion on the discrimination claim.

A. Plaintiff made a prima facie showing.

Defendant concedes the first element, ECF 20, PgID 87, so the Court will address the last three elements.

1. Plaintiff was subjected to an adverse employment action.

Defendant purports to limit the actions the Court should consider, but admits that there was a pay disparity between Plaintiff and her male counterparts. ECF 20, PgID 89–90. A lower salary is by definition an adverse or discriminatory action, so Plaintiff made a sufficient showing.

2. Plaintiff was qualified for the position.

The parties differ on how the Court should analyze Plaintiff's qualifications. Defendant emphasizes Plaintiff's allegedly unsatisfactory performance. ECF 20, 87–88. Plaintiff, on the other hand, asserts that the Court should focus on objective qualifications such as education, experiences, and demonstrated possession of the required general skills. ECF 25, PgID 375–76. Plaintiff's assertion of *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003) is persuasive. Moreover, Defendant's position is unsound because it

4

attempts to justify a discriminatory decision, Plaintiff's pay disparity, based on alleged misgivings that did not occur until after the discriminatory decision was made.

Plaintiff's objective background indeed suggests she was qualified for the position. Making all reasonable inferences in favor of Plaintiff, she had more than 16 years of production experience, 4 years of experience with Bosal, and extensive supervisory experience in a position with a previous employer. ECF 25, PgID 376. Defendant responds that Plaintiff's previous experience was in packaging rather than manufacturing, and thus did not meet the requirements listed in the Shift Manager job description. ECF 30, PgID 618. That point is well taken. But it does not adequately draw into question Plaintiff's supervisory experience—Defendant's main point of attack on the claim—especially given the low bar that *McDonnell Douglas* sets out in the burden-shifting test.

### 3. Plaintiff's male counterparts were treated more favorably.

Defendant argues that the higher-paid male counterparts, Saif and Harris, were not similarly situated to Plaintiff because Saif had experience as a welder and Harris had experience as a boxline technician. ECF 20, PgID 90–91. But those technical skills were not included on the list of a Shift Manager's key duties. ECF 20-5. Defendant also posits that the pay disparity is justified because when Saif, Harris, and Plaintiff were hourly workers, Saif and Harris earned higher wages. The argument is unpersuasive. Once the three employees were promoted to Shift Manager, they were equals. Pay disparities in their previous positions should not have carried over, especially considering that they transitioned from union positions to management. Plaintiff was similarly situated to Saif and Harris, but the two men received favorable treatment.

### B. Defendant provided evidence of a legitimate, nondiscriminatory reason for the pay disparity.

Although Defendant's argument about Saif's and Harris's technical skills was insufficient to prevent Plaintiff from clearing the low bar in step one of the analysis, the argument does provide evidence of a legitimate, nondiscriminatory reason for paying Saif and Harris more. *See* 20-10, PgID 142. Defendant need only raise a genuine issue of fact, and a reasonable person could be persuaded that Saif's and Harris's technical skills provided extra value to Defendant when the men supervised and trained welders and boxline technicians. Defendant therefore discharged its burden.

C. Plaintiff drew into question Defendant's justification.

Defendant's argument about Saif's and Harris's technical skills may raise a genuine issue of fact, but Defendant still needs to explain why the need for these specific skills is not reflected in the documented list of a Shift Manager's key duties. ECF 20-5. Additionally, Plaintiff presumably had skills from her previous position that would also be valuable in supervising and training employees holding that position. A reasonable jury could conclude that Defendant's proffered reason is actually pretext. Consequently, Plaintiff discharged her final burden and the Court will deny Defendant's motion on the discrimination claim.

II. Retaliation Claim

Plaintiff alleges that Defendant fired her, in violation of 42 U.S.C. § 2000e-2, for filing an EEOC complaint. ECF 1, PgID 4–5. The Court must apply the same test to the retaliation claim as it did to the discrimination claim. *See Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). The only difference in the analysis is that in step one, Plaintiff must make a prima facie showing that (i) she engaged in protected activity, (ii) Defendant had knowledge of the protected activity, (iii) Defendant took adverse employment action against her, and (iv) there was a causal connection between the

protected activity and the adverse employment action. *Blizzard v. Marion Tech. College*, 698 F.3d 275, 288 (6th Cir. 2012).

A. Plaintiff made a prima facie showing.

Defendant's brief does not make any arguments raising doubt about whether Plaintiff could make a showing of the first three elements, *see* ECF 20, PgID 93–96, but Defendant did raise a concern at oral argument that the Court would consider Plaintiff's right-to-sue letter, instead of the EEOC complaint, as the protected activity at issue. The Supreme Court has held that to do so would be improper. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that it is an "utterly implausible suggestion" that an EEOC right-to-sue letter can function as a protected activity). The Court will therefore proceed to address the only element at dispute: the causal connection between Plaintiff's EEOC complaint and her termination.

Plaintiff made a sufficient showing of a causal connection. Defendant argues that Plaintiff's many performance issues after her July 2015 EEOC complaint were the reasons she was fired. *See* ECF 20, PgID 76–80. Plaintiff protests that these documented disciplinary actions were an effort to "paper her file" as part of Defendant's "campaign of retaliation." ECF 25, PgID 382–83. Although such allegations typically come across as fanciful, there is documentary evidence that could confirm Plaintiff's suspicions here. In an email, Defendant's human resources representative responded to a proposal to change Plaintiff's shift. ECF 25-16, PgID 496–97. The email counsels the need to be strategic in light of Plaintiff's EEOC claim. *Id.* The concluding point in the email is that changing Plaintiff's shift would not "help us build a strong case against her for further disciplinary

7

action." *Id.* at 497. Plaintiff's argument, augmented by the HR email, provides a sufficient showing of causation. Plaintiff therefore discharged her burden.

B. Defendant provided evidence of a legitimate, nondiscriminatory reason for firing Plaintiff.

Although Plaintiff questions their legitimacy, numerous documents detail her alleged poor performance, including an external audit. Plaintiff's poor performance earned her a final warning, and then she allegedly neglected her duties resulting in reduced production during a critical time. Defendant therefore raised a genuine issue of fact as to whether its termination of Plaintiff was justified by her performance.

C. Plaintiff drew into question Defendant's justification.

Despite Defendant's documentary evidence of Plaintiff's poor performance, the HR email discussed in Section II.A raises doubts about the legitimacy of the disciplinary issues. The email suggests that Defendant was well aware of Plaintiff's protected activity and was proceeding with caution to build a case for further disciplinary action. Whether Defendant wanted to take further disciplinary action for legitimate reasons or because it hoped to fire Plaintiff for filing an EEOC complaint is an open question. But a reasonable jury could conclude the latter. Consequently, Plaintiff discharged her burden and summary judgment for Defendant on the retaliation claim is improper.

III.     Michigan's Elliott-Larsen Civil Rights Act

The parties agree that at the present stage of the litigation, Plaintiff's claims under Michigan's Elliott-Larsen Civil Rights Act should be analyzed using the same framework as the Title VII claims. *See Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 521 (6th Cir. 2015). The Court therefore will not address the state claims individually.

8

Because Plaintiff's discrimination and retaliation claims both survive the *McDonnell Douglas* burden-shifting test, the Court will deny Defendant's Motion for Summary Judgment.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment [20] is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 10, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 10, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager